UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| v. | ) | Docket No. 0645 2:25CR20701-001 |
| YUNQING JIAN, | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM ON SENTENCING

### Introduction

Yunqing Jian is before the Court for sentencing on two counts of an Information: Smuggling of plasmid DNA[1] in violation of 18 U.S.C. §545; and making false statements to FBI agents during an interview regarding the smuggling of fungus specimens of a Fusarium Graminearum (Fg), a fungus which causes disease in a number of crops, most notably wheat, which was attempted by her then-boyfriend and co-defendant, Zunyong Liu. The parties have reached a plea agreement, pursuant to which the government will dismiss Count 1 of the Information, charging the defendant with conspiracy to commit smuggling. Also pursuant to the plea agreement, the defendant is consenting to a judicial Order of Removal, pursuant to which she will leave the country immediately upon completion of her sentence. The plea agreement does not specify a recommended sentence or sentencing range, either by the parties jointly or by the government. While the defendant anticipates that the government will ask for additional time

---

[1] Plasmid DNA is commonly used in genetic research: "A plasmid is a small circular DNA molecule found in bacteria and some other microscopic organisms. Plasmids are physically separate from chromosomal DNA and replicate independently. They typically have a small number of genes — notably, some associated with antibiotic resistance — and can be passed from one cell to another. Scientists use recombinant DNA methods to splice genes that they want to study into a plasmid. When the plasmid copies itself, it also makes copies of the inserted gene." https://www.genome.gov/genetics-glossary/Plasmid

1

beyond what she has served, the prosecutor has agreed that if she is sentenced to time served, as she is asking, she will be released to ICE custody and taken the morning after sentencing to the airport to be put on a flight to China. Her parents have arranged for a ticket for her for that eventuality.

For the reasons that follow, the defendant urges this Court to sentence her to time served, which as of the date of sentencing will have been 5 months and 9 days, very close to the top of her guideline range. There is no basis to sentence her above the guideline range: on the contrary, all of the statutory factors that the court is required to consider in determining "a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, to deter the defendant and others from engaging in criminal conduct, and to provide the defendant with necessary educational, vocational or other services," 18 U.S.C. § 3553(a), counsel a more lenient sentence than she can at this point receive. The defendant also submits, both based on counsel's history of representing Chinese defendants and on the press coverage and political hysteria that the defendant's case has engendered, that there is strong prejudice in this country against Chinese defendants that has colored this prosecution as well. It should not play any part in determining Dr. Jian's sentence.

## Dr. Jian's Background

Yunqing Jian is 33 years old. She grew up an only child, with her parents and grandparents, in a small village in the mountains of Sichuan province in China. Her parents were poor and farmed for a living.[2] Yunqing grew up working in the fields with her parents and helping with household chores. But she was an outstanding student, earning top grades that

---

[2] Dr. Jian has written a letter to the Court, attached as **Exhibit A**, which describes her background. Her parents, maternal grandmother and cousin have also written letters to the Court which describe Dr. Jian's background, upbringing and education, attached as **Exhibit B.**

allowed her to escape what appeared to be her fore-ordained life as a wife and mother in the same village she grew up in. She was awarded a scholarship to attend college at the Sichuan Agricultural University, where she earned her B.S. in Plant Protection in 2015.

She continued her studies at Zhejiang University, receiving her Ph.D. in Plant Pathology in 2020 from the University's College of Agriculture and Biotechnology, and then continued there for two years as a postdoctoral researcher. Her doctoral advisor, Dr. Zhonghua Ma, writes in his letter of support that during her time in his laboratory as a graduate student and postdoctoral researcher, "Yunqing has made significant contributions to the study of Fusarium head blight control. She discovered that compounds such as nitric oxide and silver nanoparticles exhibit remarkable efficiency in suppressing Fusarium infection, providing new theoretical insights and potential applications for wheat disease control." He notes her assistance in supervising junior graduate students and her integrity in scientific research, which "have been conducted purely for academic research purposes."

In 2022, she started a postdoctoral position in the United States with Dr. Libo Shan at Texas A&M University, and she moved with Dr. Shan's lab in August, 2023 to the University of Michigan's Department of Molecular, Cellular and Developmental Biology (MCDB), where she was working at the time she was charged in this case.[3] Letters from her colleagues at the lab and faculty members of MCDB (attached as **Exhibit D**) consistently remark on her contributions to the lab, both in her research and in her personal involvement in the community. Professor Erik Nielsen writes that "she has consistently displayed integrity, kindness, and helpfulness." He recounts her assisting one of his graduate students with a project "even though these efforts were

---

[3] Dr. Jian's C.V, which has her educational and publication history, is attached as **Exhibit C**. All her publications over the years are basic research that focused on reducing fungal pathogenicity and toxin production, as well as finding alternative ways to help plants combat pathogens.

3

not directly related to her own research projects at the Shan laboratory." She was "respected by peers and research neighbors alike." Professor Ken Cadigan, the department Chair, also notes that she is "well-liked by her peers and very focused on her research." He describes her current research, which is not focused on Fg, but rather on "the evolutionary relationship between a family of signaling proteins called SCREW's and their cognate receptors, the NUT family [which] control the hydration status of plant leaves, which Dr. Jian and her colleagues believe helps plants fight off various pathogens." Her work, he continues, "is basic research: how these two gene families co-evolved in various plant species." Dr. Cadigan noted that Dr. Jian, in a department presentation, impressed him "not only with the quality of her data but also the large number of results she has obtained. This fits with the dedication and strong work ethic that I have observed in Dr. Jian over the two years she worked in MCDB."

Dr. Jian's peers also have only good to say about her. Brendan Mormile, her lab colleague, says she "became both a mentor and a close friend of mine over the years. . . . She patiently taught me molecular biology techniques and, even though English is not her first language, she explained complex terminology and methods in a way I could understand and apply." He notes that she provided the same help to other colleagues. "her positive energy and kindness were a constant presence." He concludes, "[h]aving interacted with her daily for years, I can confidently attest to her character. Yunqing is a thoughtful, loyal, compassionate friend who conducts herself with the utmost professionalism" and beyond that, she "is a thoughtful and considerate person, with a warmth that made our lab a more welcoming place."  Chao Zhang, who worked with her for two years and also shared an apartment with her, comments on her thoughtfulness as a roommate, her work in preparing materials for the entire lab group, and "at the core of it all is a truly exceptional scientific mind. As a postdoctoral researcher, Yunqing's

4

work is foundational to our lab's progress." Despite her brilliance, "she fosters collaboration by clarifying complex ideas an ensuring that everyone feels included, often giving credit to students whose ideas inspired her." Dr. Zhang concludes, "To know Yunqing Jian in both the personal and professional spheres is to witness true excellence in character and intellect. She is one of the most generous, responsible, and sincere people I know." Gabriel Quintanilha Peixoto writes that she "stood out in our group for her diligence and precision." Beyond her superb research work, he recalls, she organized badminton games and picnics, which "showed not only her kindness but also how she brought people together outside of work." Jun Liu, another colleague, also praises her academic skills and willingness to help others, and remarks on the initiative she took to organize trips for colleagues and friends, many, like her, visiting scholars in the U.S., to see this country – trips to Big Bend National Park, to the California coast and to the Gulf of Mexico.

These colleagues and professors echo one another in praising Dr. Jian's research skills and integrity, but also her kindness, generosity and selflessness in helping others. All of them express their belief that her offenses are out of character for her.

### **The Offenses**

The offenses Dr. Jian has been convicted of are smuggling biological material into the U.S. and lying to the FBI agents who later interviewed her about a second smuggling incident attempted by her then-boyfriend involving Fg. She understands she was wrong to do these things and has expressed in her letter to the Court (**Exhibit A**), her remorse at her actions. She attempted to quickly obtain materials she was using for her research, and she assisted her then-boyfriend, Zunyong Liu, in his attempt to bring Fg specimens he was conducting research on into the country so that he could continue his research, agreeing to provide him access to the

5

fluorescent microscope in her lab so that he could do so. Liu had also been a postdoctoral researcher in the same lab and was familiar with the equipment that was available there.[4]

While the offenses are serious, her motives were to continue her research without the interruption necessary to obtain materials properly, and to help Liu to pursue research that had the goal of finding better ways of combating Fg infestations of crops. In this offense, her strengths – dedication to her work and willingness to help others in their work – became her flaws. She wanted to conduct develop materials for her experiments as quickly as possible, and she helped Liu's attempt to illegally bring Fg to the U.S. for his research ends, and, similarly as for her own work, she did so to allow him to work uninterruptedly and take advantage of advanced equipment in the lab she worked in. The goals are laudable, but the means were crimes and she acknowledges that. She offers no justification for her false statements – she was very close to the end of her time in the U.S., and she was fearful that she would not be allowed to leave. She realizes this is not an excuse and apologizes for her actions.

## Application of The Sentencing Guidelines

The defendant agrees that the Base Offense Level is 6, using U.S.S.G. §2Q2.1(a), and that the enhancement for pattern of similar violations, (b)(1)(B), and for abuse of a position of trust (for agreeing to provide Liu with access to her lab for his research) U.S.S.G. §3B1.3, each add 2 points, for a total of 10 points. As discussed below, the defendant disagrees with, and objects to, adding 2 points for creating a significant risk of infestation or disease transmission under §2Q2.1(b)(2)(B), which would increase the offense score to 12. The defendant agrees that her

---

[4] Dr. Jian also acknowledges that she had previously hidden, or directed to be hidden, other biological materials to be brought into the U.S. undeclared to avoid detection by U.S. customs officials. These prior incidents are not charged offenses but contribute to an increase in her guideline score pursuant to USSG 2Q2.1(b)(1)(B) for a pattern of similar prior violations. As with the charged offense, while smuggling is not to be condoned, her purpose was to obtain materials for research purposes, and because she was in a hurry for the necessary materials, she improperly cut corners she should not have.

acceptance of responsibility reduces the score to 8 or 10 under §3E1.1(a) and that a further 2-point reduction is appropriate under §4C1.1(a), as she is a zero-point offender. Her total offense level is thus either 6 or 8, and either score yields a guideline sentencing range of 0-6 months,

The defendant's objection to the enhancement for a putative danger to U.S. crops is based on three observations. First, Dr. Liu was bringing the specimens to conduct research at the University of Michigan, in a laboratory inside the city of Ann Arbor, many miles from any crops that Fg could harm. Second, as many experts quoted in news articles covering this case note (and as Liu also told CBP officials in his interview), exactly the right combination of humidity and temperature are necessary to allow Fg to infect crops. And most significantly, the strain of Fg that Liu was carrying was a strain of Fg that was originally collected from a Michigan grain elevator and is ubiquitous in Michigan. Thus, the highly theoretical release of the samples Liu was carrying into the wild would add nothing to the already-present fungi that constantly infects Michigan crops and against which Michigan farmers constantly use available fungicides.

The defendant consulted with Dr. Roger Innes, who heads a lab at the University of Indiana, Bloomington that focuses on plant-microbe interactions, and in particular on the interaction between Fg and wheat.[5] Dr. Innes reviewed discovery materials from this case, including the CBP interview of Liu at the time of his attempt to smuggle Fg specimens into the U.S., the analysis of those specimens and other genetic materials Liu was carrying, and prior published scientific articles authored by Liu. He concludes from these materials, first of all, that the research Liu was engaged in was to find more effective ways to combat Fg infestations. He infers from the DNA and genes Liu was carrying to replicate the fungal specimens if they should

---

[5] Dr. Innes has provided a letter setting out his analysis of the materials Liu was carrying and his opinion about the strain of Fg, how it was modifed and the purpose of the modifications. This letter and an abbreviated C.V. are attached as **Exhibit E.** Dr. Cadigan, MCDB Chair, also sets out his analysis of the nature of the materials Liu was carrying and its purpose in his letter included in **Exhibit D,** which agrees with Dr. Innes' conclusions.

7

fail, that those specimens were a strain of Fg that is commonly used in research labs around the world and was originally found in Michigan and is ubiquitous in Michigan. Finally, he concludes that the strains Liu was carrying had been altered by replacing a particular gene in the Fg genome with one that had a fluorescent molecule attached to allow it to be tracked with a fluorescent microscope. This replacement, he notes, would not increase the virulence of the fungus, but could weaken it.

The fungal specimens Liu was carrying did not present any appreciable danger of infestation or disease, let alone a "significant risk." Especially in light of the ubiquity of Fg and of constant infestations from it in the U.S., the importation of these specimens, which were a strain of Fg that originated in Michigan, even if they somehow managed to reach crop fields, presented no risk above and beyond the constantly-present risk from native Fg.

For these reasons, the defendant objects to the application of this enhancement and submits that her total offense level should be 6.

## The Appropriate Sentence

Regardless of the Court's decision on the defendant's objection, her guideline range is 0-6 months. As of the date of sentencing, she has been incarcerated for 5 months and 9 days, very close the top of that range. Consideration of the Guidelines thus counsels for a sentence of time served.

Further, the factors that Congress has directed the Court to consider, and its mandate that the sentence should be "sufficient, but not greater than necessary" to satisfy those factors, also counsel for a time served sentence.[6]

---

[6] "At all times, the Court will be guided by § 3553(a)'s general parsimony provision ('court shall impose a sentence sufficient, but not greater than necessary ...'), the purposes and/or objectives of sentencing enumerated in § 3553(a)(2), and the congressional intent underlying the applicable Guideline provisions." *United States v. Phelps*, 366 F.Supp.2d 580, 589 (E.D.Tenn. 2005).

(a) <u>The sentence of time served reflects the seriousness of the offense, provides just punishment and promotes respect for the law.</u>

Dr. Jian has served close to the top of the Guideline Range that the Sentencing Commission has determined will meet these goals. The offenses are serious, but she has been incarcerated for a substantial length of time already, more than sufficient to provide just punishment and promote respect for the law.

(b) <u>To provide adequate deterrence to criminal conduct and protect the public from further crimes by the defendant.</u>

Dr. Jian has had her life and work taken away from her as a penalty for her offenses. She was fully engaged in productive and important research, and she was on the cusp of publishing two articles, one a major review article as lead author, when she was arrested. She lost that work. Her research, which gives meaning to her life, has come to a halt and she has been held in a jail for the first time in her life, with nothing to do and limited or no contact with her former colleagues. She was scheduled to return home to China in August. She was not present for her grandfather's passing, and she has been unable to see her grandmother or parents. She has felt humiliated and ashamed that her colleagues and supervisors would think badly of her. These consequences will stay with her for a very long time, and she will not risk such consequences again. Moreover, pursuant to the Judicial Order of Removal, Dr. Jian will be removed from the United States immediately and will not be in a position to engage in similar conduct in the future.

Further, other researchers who might be tempted to cut corners in a similar way to speed their research will be deterred by what has already happened to Dr. Jian. For a scientific researcher it is catastrophic to be pulled from one's research and isolated with no way of continuing it. Dr. Jian also lost her position at the University of Michigan. Virtually none of the academics who might violate this statute have ever been incarcerated, and to be held for 5 months would be an

9

additional strong deterrent to other researchers. Any researcher would be deterred by the prospect, not only of an interruption of their work, but a loss of their position and imprisonment.

(c) <u>To provide the defendant with needed educational or vocational training, medical care or other correctional treatment.</u>

There is no educational or vocational program that Dr. Jian, who is a highly advanced postdoctoral researcher, could benefit from in the prison system. What Dr. Jian needs for her educational advancement is to be able to return to her research, which has as its goal safeguarding, not damaging, agricultural crops. She needs this, and also to return to her family and home, for her mental health. There is no prison program that would substitute for these. She needs to return to her home and family.

## Conclusion

Yunqing Jian came to this country to learn and contribute to the understanding of how plants react to and ward off disease. She became a respected and highly productive member of her research community, and despite the convictions in this case, retains the respect of her community, because they know that she will continue her work and that her work will benefit people everywhere. She has borne the consequences of this case alone. Zonyung Liu, her co-defendant and the person who brought the fungus to the United States, was not arrested or imprisoned. He was returned to China, where he continues his research without any penalty. Another University of Michigan researcher, Chengxuan Han, who was similarly convicted of smuggling around the same time as Dr. Jian, was sentenced to time served after being held for approximately three months. To increase Dr. Jian's punishment when it already far exceeds the penalty Han received, and when her co-defendant received no penalty, presents an indefensible disparity. The JSIN data provided by the Probation Officer reinforces this, showing that less than a quarter of defendants convicted of similar offenses received any prison sentence, and of those

who received incarceration, the average sentence was 3 months. No sentence exceeded the guideline range. The time the defendant has already served is above the average sentence, despite the clear absence of any need for such a long sentence to satisfy the requirements of 18 U.S.C. §3553(a)(2).[7]

Because the defendant will be removed from the United States at the conclusion of her sentence and will be barred from returning for at least 10 years, she asks that the Court not impose a term of supervised release.

The defendant also requests that the Court impose no fine. She has not been able to work since her arrest, and her savings are needed to help repay the debt her parents have incurred to pay for her legal defense. They are poor and the debt, if they do not have this money, will be crushing for them.

Finally, the defendant, along with the government, asks that the Court enter the proposed Judicial Order of Removal and that Dr. Jian, who has a ticket to leave for China on the morning after sentencing, be allowed to leave the country on that flight.

Dr. Jian has had her career interrupted at a critical juncture and has lost a prestigious position and likely two prestigious publications. She has spent over 5 months in jail. She hopes, but cannot be sure, that on her return to China she will be able to obtain a position that allows her to resume her work and her career. She remains dedicated to her research.

In light of both the guidelines and the factors set forth in 18 U.S.C. § 3553, and in light of the severe consequences this case has had for Dr. Jian's career, a sentence of time served is more than adequate to satisfy the purposes set out in section 3553.

Respectfully submitted,

---

[7] This data is for defendants who have a final CH score of 8. If the CH score is 6, the numbers are even lower.

11

By his attorneys,

/s/ David Duncan
Norman S. Zalkind (BBO #538880)
David Duncan (BBO #546121)
Zalkind Duncan & Bernstein LLP
2 Oliver Street, Suite 200
Boston, MA 02109
(617) 742-6020
nzalkind@zalkindlaw.com
dduncan@zalkindlaw.com

James R. Gerometta
27 E. Flint St. Suite 2
Lake Orion, MI 48362
(313) 530-9505
james@geromettalaw.com

Dated: November 5, 2025

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by electronic filing on this date.

/s/ David Duncan